UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ANGELO CARTER, :
:
    Plaintiff, : CIVIL NO. 3:11-CV-1669
:
v. : (Judge Kosik)
:
UNITED STATES OF AMERICA, :
:
    Defendant :

FILED
SCRANTON
JUN 1 1 2012
PER _____
DEPUTY CLERK

**MEMORANDUM**

    Plaintiff Angelo Carter ("Carter"), a federal inmate presently confined at the Federal Correctional Institution Allenwood ("FCI Allenwood") in White Deer, Pennsylvania, initiated the above action pro se by filing a complaint raising a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq.[1] (Doc. 1.) He seeks monetary damages based upon his claim that Defendant negligently served him spoiled food at the lunch meal on July 21, 2010 at FCI Allenwood, which he alleges resulted in food poisoning. Presently before the Court is a motion to dismiss, or in the alternative, motion for summary judgment filed on behalf of Defendant. (Doc. 15.) For the reasons set forth below, the motion to dismiss will be denied, and the motion for summary judgment will be granted.

---

[1]The FTCA confers subject matter jurisdiction over negligence actions against the United States on district courts. 28 U.S.C. § 1346(b)(1).

I.  **Motion to Dismiss**

Defendant argues that Carter has failed to allege a physical injury as is required by 28 U.S.C. § 1346(b)(2), and therefore his Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

A.  **Standard of Review**

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Twombly, 550 U.S. at 555). Accordingly, to satisfy the plausibility

standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

Under the two-pronged approach articulated in Twombly and later formalized in Iqbal, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Next, the district court must identify "the 'nub' of the ... complaint-the well-pleaded, nonconclusory factual allegation[s]." Id. at 680. Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. See id.

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (citing Twombly, 550 U.S. at 588 n. 8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable

expectation that discovery will reveal evidence of the necessary element." Id. at 234.

## B. Discussion

28 U.S.C. § 1346(b)(2) provides as follows:

> No person convicted of a felony who is incarcerated . . . while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

28 U.S.C. § 1346(b)(2). Defendant argues that Carter's allegations that he suffered physical symptoms of vomiting and diarrhea are insufficient to meet the requirements of § 1346(b)(2). (See Doc. 16, Def.'s Br., at 6.) In his Complaint, Carter alleges that, after the lunch meal on July 21, 2010, he became "violently ill" and "suffered food poisoning resulting in gastritis, gastroduodenitis, and gastroenteritis," and that he was confined to bed "for-not-less-than three (3) days".[2] (See Doc. 1 ¶¶ 8-10.) The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997, also is applicable to Carter's claims. See Perez v. United States, 271 Fed. Appx. 240, 242 (3d Cir. 2008) (nonprecedential) (remanding for district court to consider whether inmate plaintiff's allegations of physical effects suffered after asthma attack, including dizziness, weakness, nausea, headache, and back pain, were sufficient to meet criteria of

---

[2]Contrary to Defendant's assertion, Carter does not specifically mention physical symptoms of vomiting and diarrhea in his Complaint, but it appears that Defendant inferred that Carter had these symptoms based upon his allegations.

§ 1346(b)(2) and 42 U.S.C. § 1997e(e)); see also Michtavi v. United States, Civil No. 4:07-CV-0628, 2009 WL 578535, at *5 & n.2 (M.D. Pa. Mar. 4, 2009). Under the PLRA, "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The "physical injury" requirement may be satisfied by a "less-than-significant-but-more-than-*de minimis* physical injury as a predicate to allegations of emotional injury." Mitchell v. Horn, 318 F.3d 523, 534 (3d Cir. 2003). We find that Carter's allegations of his symptoms make a showing of a physical injury sufficient to withstand a motion to dismiss his FTCA claim, and therefore, Defendant's Motion to Dismiss will be denied. See Perez, 271 Fed. Appx. at 241-42. We therefore turn to Defendant's alternative argument that the United States is entitled to judgment as a matter of law.

II.     **Motion for Summary Judgment**

    A.     **Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence or nonexistence might affect the

5

outcome of the suit under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. Id. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." Id.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention

that the facts entitle it to judgment as a matter of law. Anderson, 477 U.S. at 256-57. The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103, 1109-10 (3d Cir. 1985). Rather, a party asserting that a fact is genuinely disputed must support that assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Thus, summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48.

**B.    Undisputed Facts**

Middle District of Pennsylvania Local Rule ("L.R.") 56.1 provides, in relevant part, as follows: "The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the [moving party's] statement, as to which it is contended there is a genuine issue to be tried . . . All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." L.R. 56.1 also provides that, "Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements."

Carter was directed in our March 13, 2012 order to file his opposition to the instant motion in accordance with the requirements of L.R. 56.1 and, pursuant to our order, was provided with a copy of the Court's standing practice order, which summarizes the requirements of L.R. 56.1, and attached to which is a copy of the rule.

(See Doc. 18.) Our March 13 order also warned Carter that his failure to file his opposition as directed would result in Defendant's motion being deemed unopposed and addressed on the merits. (Id.) While Carter filed a statement of material facts (Doc. 20), it is not responsive to Defendant's statement. Moreover, his statements do not include references to the parts of the record that support the statements. As such, the facts set forth in Defendant's statement will be deemed admitted.[3]

Defendant's statement (Doc. 17) and supporting exhibits[4] (Doc. 16-1) establish the following undisputed facts relevant to the disposition of the instant motion:

On July 21, 2010, multiple inmates at FCI Allenwood made complaints of stomach pain, diarrhea, and vomiting. (Doc. 17, Defs.' SMF, ¶ 1; Doc. 16-1, Ex. 1,

---

[3]While the facts in Defendant's statement will be deemed admitted, we are mindful of our obligation to construe pro se filings liberally, see Liggon-Redding v. Estate of Robert Sugarman, 659 F.3d 258, 265 (3d Cir. 2011), and to that end, in disposing of the instant motion, we will consider the evidence submitted by Carter in opposition to the instant motion, including his affidavit (Doc. 19-1 at 1-5) and supporting exhibits (Doc. 19-1 at 6-12).

[4]In support of its request for summary judgment, Defendant has submitted the declaration of Kelley DeWald, the Health Services Administrator ("HSA") at the Allenwood Federal Correctional Complex ("FCC Allenwood") (Doc. 16-1 at 1-4), and supporting attachments, including Carter's Public Information Inmate Data Summary (Attach. 1); the FCC Allenwood Food-Borne Illness Screening Form filled out as to Carter on July 21, 2010 (Attach. 2); and the Clinical Encounter Notes for Carter's Health Services evaluation on July 23, 2010 (Attach. 3).

DeWald Decl., ¶ 4.) Due to the number of inmates voicing complaints, Health Services staff triaged all inmates in their housing units and work areas and completed a screening form for each inmate for possible food-borne illness. (Doc. 17 ¶ 2.) A review of Carter's medical record reveals that he was evaluated in his housing unit on July 21, 2010. (Id. ¶ 3; Doc. 16-1, Attach. 2.) At that time, he complained of having diarrhea, nausea, vomiting, and abdominal pain. (Doc. 17 ¶ 4.) An examination revealed that Carter had a temperature of 97.6 degrees, pulse of 50, respiration of 18 breaths per minute, and blood pressure of 123/72. (Id. ¶ 5.) His mucus membranes and skin turgor were normal. (Id. ¶ 6.) His abdomen was firm and tender and bowel sounds were noted. (Id. ¶ 7.) Carter was advised to report to sick call if his symptoms persisted. (Id. ¶ 8.)

On July 23, 2010, Carter reported to sick call triage with complaints of continued diarrhea, nausea, and vomiting. (Id. ¶ 9; Doc. 16-1, Attach. 3.) An examination revealed that he had a blood pressure of 108/67 while lying down, and 109/71 and 109/61 while sitting. (Doc. 17 ¶ 10.) Carter had a temperature of 99.9 prior to the end of the clinical encounter. (Id. ¶ 11.) He was administered one liter of Ringers lactate intravenously. (Id. ¶ 12.) Carter was prescribed Ciprofloxacin and Metronidazole for his gastritis and gastroduodenitis condition. (Id. ¶ 13.) He was

advised to return to sick call if his condition worsened. (Id. ¶ 14.) Carter never returned to Health Services, nor was he treated for any additional stomach/gastritis issues after July 23, 2010. (Id. ¶ 15; Doc. 16-1 at 3, DeWald Decl., ¶ 7.)

Because multiple inmates experienced stomach issues on July 21, 2010, Health Services sent multiple fecal specimens to an outside laboratory for testing. (Doc. 17 ¶ 16; Doc. 16-1 at 3 ¶ 8.) The results of the testing failed to identify the cause of the stomach/gastritis issues. (Doc. 17 ¶ 17; Doc. 16-1 at 3 ¶ 8.) The Food Services Department also took numerous precautions, including sanitizing of the entire kitchen and food preparation areas. (Doc. 17 ¶ 18; Doc. 16-1 at 3 ¶ 8.) Meals continued as scheduled, including the dinner meal on July 21, 2010, with normal inmate turnout and without any additional issues or concerns. (Doc. 17 ¶ 19; Doc. 16-1 at 3 ¶ 8.) The information acquired by Health Services in evaluating the inmates and the steps taken by Food Services revealed the source of the illness was not the food products served during the lunch meal on July 21, 2010. (Doc. 17 ¶ 20; Doc. 16-1 at 3 ¶ 8.)

### C.     Discussion

The FTCA governs all claims "against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the

scope of his office or employment . . . ." 28 U.S.C. § 2675(a). Under the FTCA, "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. It is well-settled that, in considering a FTCA action, a federal district court must apply the law of the state in which the alleged tortious conduct occurred. Id.; Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987). To establish a cause of action for negligence in Pennsylvania, a plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. Northwest Mutual Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005); Pittsburgh Nat'l Bank v. Perr, 637 A.2d 334, 336 (Pa. Super. Ct. 1994). Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the evidence. Baum v. United States, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982). Furthermore, Pennsylvania law defines proximate cause as causation which was a factual cause in bringing about the injury. See Gorman v. Costello, 929 A.2d 1208, 1213 (Pa. Super. 2007); Pa. SSJI (Civ) 13.00 and 13.160.

Defendant concedes that there is no question that the BOP owed Carter and other inmates a duty to not serve spoiled food. (See Doc. 16 at 9.) However,

Defendant argues that Carter cannot show that the BOP breached its duty or show causation. We agree that the record is devoid of any evidence that the BOP breached its duty and served Carter spoiled or rotten food on July 21, 2010 or that the symptoms Carter experienced were caused by negligent conduct on the part of BOP staff. Specifically, it is undisputed that the testing of fecal specimens of inmates who experienced stomach issues on July 21, 2010 by an outside laboratory failed to identify the cause of the stomach/gastritis issues. (Doc. 17 ¶ 16; Doc. 16-1 at 3 ¶ 8.) Carter has not provided any other evidence to demonstrate that some conduct on the part of BOP staff was a "factual cause" in bringing about his symptoms.

In opposing the instant motion, Carter submitted an affidavit in which he avers that, during his Health Services evaluation on July 23, 2010, the nurse who treated him, Certified Registered Nurse Practitioner ("CRNP") Cost, informed him that he and other inmates had incurred food poisoning from something served at the lunch meal on July 21, 2010.[5] (Doc. 19-1, Pl. Aff., ¶¶ 9-10.) Carter also states that Cost

---

[5]Contrary to Defendant's contention that Carter did not receive any further treatment for stomach issues after July 23, 2010, Carter avers in his affidavit that CRNP Cost directed him to return to Health Services for the following seven (7) days for the taking of his vital statistics, which he states he did, and that he also was placed on the call-out for July 26, 2010 for a follow-up, and that he was further treated at that time. (Doc. 19-1 ¶¶ 12-14.) The Health Services evaluation sheet reflects that Carter was scheduled for a follow-up on July 26, 2010, but neither party has

(continued...)

told him that the FCI Allenwood staff had ordered the disposal of all leftover food from the July 21, 2010 lunch meal, and a complete cleaning, sanitation, and disinfecting of the work and food services areas in the mess hall. (Id. ¶ 16.)

In its reply brief, Defendant submits that Carter may not rely on the statement by CRNP Cost as evidence that his symptoms were caused by spoiled food because Cost's statement constitutes hearsay and therefore cannot raise a material factual dispute sufficient to defeat a properly supported motion for summary judgment. (See Doc. 23 at 5.) Federal Rule of Civil Procedure 56(c)(4) provides that, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." In the Third Circuit, hearsay statements contained in an affidavit can be considered on a motion for summary judgment only if they are capable of admission at trial. Shelton v. University of Med. & Dentistry of N.J., 223 F.3d 220, 223 n.2 (3d Cir. 2000); see also Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224,

---

[5](...continued)
submitted a record showing that the appointment occurred. (See Doc. 16-1 at 14.) Even if Carter received further medical treatment, it is of no moment because it does not prove that the symptoms Carter was experiencing were caused by negligent conduct on the part of BOP staff.

1235 n.9 (3d Cir. 1993). Accordingly, a party cannot rely on hearsay evidence to successfully oppose a motion for summary judgment. Bouriez v. Carnegie Mellon University, No. Civ. A. 02-2104, 2005 WL 2106582, at *9 (W.D. Pa. Aug. 26, 2005). Where a hearsay objection is raised in the context of a motion for summary judgment, a party must respond by demonstrating that the evidence would be admissible at trial under an exception to the hearsay rule, or that the material is not hearsay. Id. (citing Burgess v. Allstate Ins. Co. 334 F. Supp. 2d 1351 (N.D. Ga. 2003).

In the instant case, Carter has responded to the hearsay objection raised by Defendant in a sur-reply brief.[6] (See Doc. 24.) In his sur-reply, Carter notes that, in opposition to the instant motion, he submitted copies of his medical records. Indeed, attached to Carter's affidavit are copies of the medical records that also were submitted by Defendant consisting of the screening form that was filled out when Carter was triaged on July 21, 2010 (see Doc. 16-1, Attach. 1; Doc. 19-1, Attach. 1) and the notes of Carter's evaluation on July 23, 2010 (see Doc. 16-1, Attach. 3; Doc. 19-1, Attach. 2). Carter asserts that these records constitute "business records" prepared by CRNP Cost and therefore are not hearsay, but instead are "records

---

[6]Although Carter failed to seek leave to file a sur-reply brief as is required by L.R. 7.7, we nevertheless have reviewed and are considering this filing in disposing of the instant motion inasmuch as he is entitled to respond to Defendant's hearsay objection.

contemporaneously prepared and maintained by Defendant." (Doc. 24 at 2.)

There is no question that the medical records Carter refers to would fall within the business records exception to the rule against hearsay as set forth in Federal Rule of Evidence 803(6) where they have been submitted along with the declaration of HSA DeWald who has certified that the records are true and accurate copies of documents maintained in the ordinary course of business by the Federal Bureau of Prisons (see Doc. 16-1 at 4).[7] However, Defendant's hearsay objection is not to the content of these medical records. The objection is to Carter's inclusion of a statement allegedly made by CRNP Cost that is not contained in Carter's medical records[8], but

---

[7]Federal Rule of Evidence 803(6) states as follows:

> **(6) Records of a Regularly Conducted Activity.** A record of an act, event, condition, opinion, or diagnosis if;
> **(A)** the record was made at or near the time by - - or from information transmitted by - - someone with knowledge;
> **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> **(C)** making the record was a regular practice of that activity;
> **(D)** all of these conditions are shown by the testimony of the custodian or anotehr qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> **(E)** neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

[8]Carter's medical records do not reflect a diagnosis of "food poisoning" but
(continued...)

rather is set forth in his affidavit, that Carter's symptoms were caused by food poisoning. (See Doc. 23 at 5.) Federal Rule of Evidence 801(c) defines hearsay as a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." CRNP Cost's statement falls into this category inasmuch as she allegedly made the statement during her encounter with Carter on July 23, 2010, and Carter seeks to offer it to prove that his symptoms were caused by food poisoning. Thus, where Carter has failed to demonstrate either that CRNP Cost's statement does not constitute hearsay, or that it would be admissible at trial under an exception to the hearsay rule, Carter may not rely on the statement as set forth in his affidavit to oppose Defendant's request for summary judgment. Moreover, where the record demonstrates that Carter cannot show breach of a duty or causation, he cannot establish a prima facie case of negligence, and therefore, Defendant is entitled to judgment as a matter of law.[9]

---

[8](...continued)
instead reflect a diagnosis of "unspecified gastritis and gastroduodenitis." (See Doc. 16-1 at 13.)

[9]At the end of his opposition brief, and in his sur-reply brief, Carter asserts that the doctrine of res ipsa loquitur is applicable to this case because multiple inmates became ill simultaneously. (See Doc. 19 at 5; Doc. 24 at 4.) The doctrine of res ipsa loquitur provides that the circumstances surrounding an injury may give rise to an inference of negligence. Quinby v. Plumsteadville Fam. Prac., 907 A.2d 1061, 1071
(continued...)

### III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be denied, and its motion for summary judgment will be granted. An appropriate order follows.

---

[9](...continued)
(Pa. 2006). "It is a rule that provides that a plaintiff may satisfy his burden of producing evidence of a defendant's negligence by proving that he has been injured by a casualty that normally would not have occurred in the absence of the defendant's negligence." Id. It simply cannot be said that an individual could not suffer the symptoms that Carter alleges he suffered, or that multiple individuals could not suffer these symptoms simultaneously, in the absence of someone's negligence. For example, such symptoms could occur either in one individual or multiple individuals as a result of a viral or bacterial infection. Accordingly, we find the doctrine of res ipsa loquitur to be inapplicable in this case.