## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELO CARTER, | : | |
| | : | Civil No. 3:11-CV-1669 |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant | : | |

### MEMORANDUM OPINION

### I.   Statement of Facts and of the Case.

The *pro se* plaintiff, Angelo Carter, is a federal prisoner, who filed a lawsuit on September 6, 2011, against the United States, alleging that in July 2010 he was housed at FCI Allenwood, and contracted food poisoning.  (Doc. 1)  Alleging negligence on the part of the prison in the preparation and service of this food, the plaintiff seeks damages from the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2675, *et seq*.

The defendant has now moved for summary judgment on this claim alleging that the undisputed facts show that the plaintiff has not presented any competent proof that he contracted food poisoning.  Specifically, the defendant alleges that the undisputed evidence shows that on July 21, 2010, multiple inmates at FCI Allenwood made complaints of stomach pain, diarrhea, and vomiting.  (Doc. 46, Declaration of Jim

Reid (Ex. 2) at & 3)  Following this reported outbreak of illness, prison officials endeavored to determine whether some food-borne contamination was responsible for this medical episode.  Prison officials report that they uncovered no evidence of food poisoning.  As part of this effort, prison officials sought fecal specimens from inmates. Such specimens are necessary to diagnose food poisoning.  Seven of the inmates experiencing symptoms of gastro-intestinal illness were able to provide fecal specimens.  (Id. at ¶ 7.)  In this case, "[n]one of the seven fecal specimens tested positive for food poisoning."  (Id. at ¶ 9.)  Furthermore, on July 21, 2010, the Food Services Department took numerous precautions including a thorough sanitizing of the entire kitchen and food preparation areas.  (Id., Ex. 1 (DeWald Dec.) at ¶ 8.).  The feeding of all meals continued as scheduled, including the dinner meal on July 21, 2010, with normal inmate turnout and without any additional issues or concerns.  (Id.)

A review of Carter's medical record reveals that he was evaluated in his housing unit on July 21, 2010.  (Id., Declaration of Kelley DeWald (Ex. 1) at & 5, Attach. 2 (Food-Borne Illness Screening Form).)  At that time, Carter complained of having diarrhea, nausea, vomiting, and abdominal pain, but examination revealed he had a temperature of 97.6 degrees, pulse of 50, respiration 18, and his blood pressure was 123/72.  Carter's mucus membranes and skin turgor were normal, and his abdominal exam was firm and tender with normal bowel sounds noted.  (Id.)  Carter could not

provide a fecal specimen, and, therefore, prison officials were unable to conduct further testing for food poisoning (Id., Ex. 2 (Reid Dec.) at ¶ 9.)

Two days later, on July 23, 2010, Carter reported to sick call triage with complaints of continued diarrhea, nausea, and vomiting and was evaluated by Nurse Cost. (Id. at ¶6, Attach. 3 (7/23/10 Clinical Encounter).)  Nurse Cost assessed Carter's condition as "unspecified gastritis and gastroduodenitis."  (Id. at Attach. 3.)  An examination revealed that Carter had a blood pressure of 108/67 while lying down, and 109/71 and 109/61 while sitting, as well as a temperature of 99.9 prior to the end of the clinical encounter.  (Id.)  Carter was provided one liter of Ringers lactate intravenously and was prescribed Ciprofloxacin and Metronidazole for the "unspecified gastritis and gastroduodenitis." (Id.)  Carter was also advised to return to sick call if his condition worsened.  (Id.)  These encounters were Carter's only visits and evaluations for any stomach or gastro-intestinal condition.  (Id.)

At his deposition, Carter testified that he does not remember what he ate on July 21, 2010.  (Id., Carter Depo. (Ex. 3) at 27:15-22, 30:1-6.)  Furthermore, at his deposition Carter was unable to identify any admissible evidence that supported his claim that he suffered from food poisoning as a result of this incident, as he alleged in his complaint.  Specifically, at his deposition, Carter simply testified that when he saw Nurse Cost on July 23, 2010, she put him on an IV and told him he had a "bacteria." (Id., Ex. 3 (Carter Depo.) at 11:5-19, 14:12-19.)  When Carter was asked

about the July 23, 2010, medical record at his deposition, he did not dispute Nurse

Cost's diagnosis of "unspecified gastritis and gastroduodenitis." (Id. at 42:5-24, 43:1;

Dep. Ex. 1 (Affirmation of Carter) at Attach. 2.)  When Carter was asked if "anyone

[told him] the food was spoiled," he testified "inmates." (Id. at 63:15-24, 64:1-4.)

Thus, while Carter has previously stated (Doc. 19-1) that "CPNR Cost told me that I,

and at least 50 other inmates had incurred Food Poisoning, from something served at

the lunch meal on July 21, 2010," (Id. at Dep. Ex. 1 (Carter Affirmation) at ¶ 10), his

current deposition testimony and medical records do not support this factual assertion.

Instead, the only source for this claim that Carter's intestinal ailments were the result

of food poisoning are other unnamed inmates.

On December 30, 2013, the defendant filed a summary judgment motion and

brief in this case. (Doc. 44)  This motion raised a straightforward legal claim, arguing

that the plaintiff's claim failed because the undisputed evidence failed to show that

plaintiff had ever contracted food poisoning.

When seven weeks passed without a response by Carter to this motion, we

entered an order  on February 24, 2014, which underscored for the plaintiff in clear

and precise terms his obligation to respond to this motion, as well as the consequences

which would flow from a failure to respond, stating:

> [T]he plaintiff shall file a response to the motion in accordance with
> Local Rule 7.6 on or before **March 14, 2014**.  Pursuant to Local Rule 7.7

the movant may then file a reply brief within 14 days of the filing of this response, or on or before **March 28, 2014**.  All briefs must conform to the requirements prescribed by Local Rule 7.8.  The plaintiff is also placed on notice that a failure to respond to a motion may result in the motion being deemed unopposed and granted.  Further, Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions, and provides that

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion.  *Any party who fails to comply with this rule shall be deemed not to oppose such motion.*  Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition.  A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' Stackhouse v.Mazurkiewicz, 951 F.2 d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010).  Therefore, a failure to comply with this briefing order may result in the motion being deemed unopposed and granted.

(Doc. 49)

Despite this explicit notice, the plaintiff has not responded to this motion, and the time for responding has now passed. Therefore, in the absence of any timely response by the plaintiff, we will deem the motion to be ripe for resolution.

For the reasons set forth below, this motion will be granted.

**II.    Discussion**

      **A.    Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted**

At the outset, under the Local Rules of this Court the plaintiff is deemed to concur in this motion, since the plaintiff has failed to timely oppose the motion, or otherwise litigate this case. This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the Rules of this Court warrants dismissal of the action, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (1991)." <u>Williams v. Lebanon Farms Disposal, Inc.</u>, No. 09-1704,  2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010).  In this case the plaintiff has not complied with the Local Rules, or this Court's orders, by filing a timely response to this motion despite our specific direction that he comply. Therefore, these procedural defaults by the plaintiff compel the court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice.  *See* Fed.R.Civ.P. 1.  Often that will mean that courts should strive to resolve cases on their merits whenever possible.  However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge another fundamental guiding tenet of our legal system.  A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice:  'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular

dispute be placed before the court in a timely fashion'." Id.  Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here.  In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to this dispositive motion.  This failure now compels us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose this motion.

### B.    Dismissal of this Case Is Also Warranted Under Rule 41

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that:  "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion.  Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).  That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors.  As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)). Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus, 538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of

dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction.  See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action.  At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are now entirely attributable to the plaintiff, who has failed to abide by court orders, and has otherwise neglected to litigate this case, or respond to defense motions.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action.  Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration.  As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment."  Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted).  Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . .  However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d

Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." <u>Ware</u>, 322 F.3d at 222.

<u>Briscoe  v. Klaus</u>, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action.   In such instances, the defendant is plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge.   <u>Tillio v. Mendelsohn</u>, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); <u>Reshard v. Lankenau Hospital</u>, 256 F. App'x 506  (3d Cir. 2007) (failure to comply with discovery compels dismissal); <u>Azubuko v. Bell National Organization</u>, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third <u>Poulis</u> factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate.   In this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' <u>Adams</u>, 29 F.3d at 874." <u>Briscoe v. Klaus,</u> 538 F.3d at 260-61 (some citations omitted).   Here, the plaintiff has failed to respond to a defense motion which alleges that the plaintiff's food poisoning claims are incorrect.

The plaintiff has also failed to timely file pleadings, and has not complied with orders of the Court. Thus, the plaintiff's conduct begins to display "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874.

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case. In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994). At this juncture, when the plaintiff has failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case, and has violated the Local Rules, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g.,

Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion.  In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail.  The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant.  Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims.  In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant.  The plaintiff cannot refuse to address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him.  Furthermore, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263.  Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, on the current factual record the plaintiff's claims likely fail on their merits, yet another factor which favors dismissal of this action. The legal flaws inherent in these claims are discussed separately below.

### C.    The Plaintiff's Claims Fail as a Matter of Law

As we have previously observed, the plaintiff, a federal prisoner, has sued the United States under the Federal Tort Claims Act, alleging negligence which led to him contracting salmonella food poisoning at the Federal Correctional Institution Allenwood. Yet, the undisputed evidence before us presently fails to support the plaintiff's claim that he suffered from food poisoning. This failure of proof is fatal to this claim on summary judgment.

The defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56 (a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. <u>Id.</u> at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. <u>Conoshenti v. Pub. Serv. Elec. & Gas Co.</u>, 364 F.3d 135, 145-46 (3d Cir. 2004). The defendant has met this burden in the instant case. Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." <u>Berckeley Inv. Group. Ltd. v. Colkitt</u>, 455 F.3d 195, 201 (3d Cir. 2006); <u>accord</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. <u>Celotex</u>, 477 U.S. at 322.

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the

numbered paragraphs set forth in the statement required [to be filed by the movant],

as to which it is contended that there exists a genuine issue to be tried"; if the

nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be

served by the moving party will be deemed to be admitted." L.R. 56.1.  Under the

Local Rules, the failure to follow these instructions  and appropriately challenge the

material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the
> facts set forth in the movant's statement.  This Local Rule serves several
> purposes.  First, it is designed to aid the Court in its determination of
> whether any genuine issue of material fact is in dispute.  Second, it
> affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as
> recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go
> beyond the pleadings and by her own affidavits, or by the depositions,
> answers to interrogatories, and admissions on file, *designated specific
> facts showing that there is a genuine issue for trial*.'  477 U.S. 317, 324
> (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr.

5, 2007) (parallel citations omitted; court's emphasis).  A party cannot evade these

litigation responsibilities in this regard simply by citing the fact that he is a *pro se*

litigant.  These rules apply with equal force to all parties.  See <u>Sanders v. Beard</u>, No.

09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are

not excused from complying with court orders and the local rules of court"); <u>Thomas

v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8,

2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

This is a negligence action brought against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2675, *et seq*, which governs all claims against the United States "for money damages for injury or loss of personal property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 2675(a).  Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances," id. at § 2674, and the "'extent of the United States' liability under the FTCA is generally determined by reference to state law.' " In re Orthopedic Bone Screw Product Liab. Litig., 264 F.3d 344, 362 (3d Cir. 2001) (quoting Molzof v. United States, 502 U.S. 301, 305 (1992)).

Thus, a federal district court, in considering an FTCA action, must apply the law of the state in which the alleged tortious conduct occurred.  See 28 U.S.C. § 1346(b)(1991); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987).  Construing this case under settled Pennsylvania tort law, in order to establish a cause of action for negligence, a plaintiff must prove the following elements:  (1) a duty or obligation to the plaintiff recognized by law; (2) a breach of that duty to the plaintiff; (3) a causal connection between the conduct and plaintiff's resulting injury; and (4) actual damages suffered by the plaintiff.  Pittsburgh Nat'l Bank v. Perr, 637 A.2d 334, 336 (Pa. Super. Ct. 1994).

At present, the undisputed and uncontested facts show that the plaintiff's negligence claim fails on at least three of these four essential elements of a tort claim under Pennsylvania law. Given that it is currently undisputed that the plaintiff has not shown that he contracted food poisoning, the plaintiff has failed to show either: (1) breach of a duty owed to the plaintiff; or (2) a causal connection between any conduct of the defendant and an injury to the plaintiff; or (3) any actual damages suffered by the plaintiff as a result of the defendant's conduct.

In sum, then, absent some further competent proof this claim is fatally flawed, and fails as a matter of law on the undisputed facts that are now before the Court. Accordingly, the defendant is entitled to summary judgment on this claim and, since the claim fails on its merits, all of the Poulis factors call for dismissal of this case.

Having concluded that this *pro se* complaint is flawed, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the current complaint fails to state a viable civil rights cause of action, the factual and legal grounds proffered in support of this complaint make it clear that the plaintiff has no right to relief, and the

plaintiff has declined to respond to court orders, or otherwise litigate these claims.  On these facts, we conclude that granting further leave to amend would be futile or result in undue delay.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Therefore, the complaint be dismissed without further leave to amend.

### III.    Conclusion

Accordingly, for the foregoing reasons, the defendant's Summary Judgment Motion (Doc. 44), is GRANTED and the plaintiff's Complaint is dismissed.

An appropriate order will issue.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated:  March 20, 2014